**FEIL v. SMITH, District Director of Immigration.**

## COSTEA v. SAME.

### Nos. 4304, 4305.

Circuit Court of Appeals, Seventh Circuit.
Jan. 9, 1931.

David Snow, of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., and Joseph A. Struett, and Thomas Dodd Healy, Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge.

These appeals, having some questions in common, were heard together, and will be disposed of in one opinion. They were taken from orders of the District Court made in habeas corpus proceedings brought after orders for deportation had been made against appellants, and the deportation warrants had issued.

The main question raised and discussed in the cases is whether the applicable statutory limitation upon their deportation is three years. The statute under which the deportation proceedings were instituted is:

"At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this subchapter, or in violation of any other law of the United States; * * * at any time within three years after entry, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who enters without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." U. S. Code, tit. 8, § 155, 8 USCA § 155, section 19, Immigration Act of 1917, 39 Stat. 889.

It appears that each of the appellants had been in this country more than three years prior to the institution of the deportation proceedings. In Feil's case it is contended that his entry occurred more than five years before proceedings were begun, and that his deportation is barred, even though that limitation were applicable; but this we need not determine in view of the conclusion we reach.

The nature of the charge wherefore deportation is sought appears in the transcripts only from copy of the warrants of arrest and the warrants of deportation, attached as exhibits to the petitions for habeas corpus. In Costea's case it is stated to be that he is "subject to deportation under the provisions of a law of the United States, to wit: the Passport

law (Act of May 22, 1918) and the President's Proclamation thereunder · in that he was not at the time of his entry in possession of a properly visaed passport; and the Act approved May 19, 1921, as amended by Public Resolution 56, approved May 11, 1922, in that he entered the United States without being admitted and charged to the quota allotted to the country of which he is a native for the fiscal year ended June 30, 1924."

The warrants in Feil's case make no reference to the passport law, but otherwise are as in Costea's case.

■ Nothing is charged with reference to the place, time, or manner of entry, nor the inspection of the aliens; but in each petition for habeas corpus the alien sets up that he entered the United States without inspection, and not through a regular port of entry. The object of setting up a ground for deportation with which the aliens were not charged is not apparent, unless it was on the theory that as to such a ground the statutory limitation of three years was applicable, and that this limitation would attach to any other alleged ground of deportation. But it is too plain for argument, and this court has held, that any ground of deportation whereon the limitation is five years will not be affected by a coexistent ground of deportation as to which the limitation is only three years. United States ex rel. Candreva v. Smith (C. C. A.) 27 F.(2d) 642.

■ In Judge Woodward's opinion in Costea's Case (D. C.) 36 F.(2d) 503, the charge that the alien entered without having a passport visaed by an American consul, in violation of the Passport Act of May 22, 1918 (22 USCA §§ 223–226), and the President's proclamation thereunder, is rejected as ground for deportation. The court concluded that the act and proclamation were intended for the guidance of immigration officials, and do not authorize deportation. We think the reasoning in that respect is sound, and the government makes here no contention in conflict therewith.

■ The opinion in respect to the other ground alleged is evidently predicated upon the assumption that the immigration quota of the nation whence Costea came was full at the time he entered. Upon this assumption it was concluded that under the quota law Costea thus became one of an excluded class, and therefore deportable within five years after entry. On this proposition there is sharp disagreement among the federal courts as to which of the two statutory limi-

tations is applicable. In Kanaszczyc v. Mathews, 30 F.(2d) 573 (6 C. C. A.), it was held that the three-year limitation applied, while in Hurst v. Nagle, 30 F.(2d) 346 (9 C. C. A.), the five-year limitation was held applicable. McCandless v. United States ex rel. Swystun, 33 F.(2d) 882 (3 C. C. A.), follows the first-cited case, and Judge Woodward agreed with Hurst v. Nagle.

Section 2(d) of the Quota Act of May 19, 1921 (42 Stat. 6), prescribes:

"When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this Act shall have been admitted all other aliens of such nationality, except as otherwise provided in this Act, who may apply for admission during the same fiscal year shall be excluded."

This very clearly defines an excluded class consisting of such aliens who would ·enter after the quota of their nation for the fiscal year is filled. Nothing is said of any such as would enter before the quota is full. We must deal with a statute as we find it. The warrants do not charge these aliens with having entered after the quota of their respective nations for the fiscal year was full. They do not charge these aliens with being of that class which the quota law specifically excludes from entry. The warrants merely charge that the aliens entered without having been charged to the quota of their nations for that fiscal year. This of itself would not constitute them members of the class excluded by the quota law, and the warrants do not charge that they were of any other of the various classes excluded by law, nor that they entered or were found in the United States "in violation of any ·other law of the United States."

Under · quite similar circumstances the New Jersey District Court recently said:

"The question involved is as to which limitation applies to the relator in this case.

"The relator is not charged with having entered the United States in excess of the quota from his native country for the year in question, nor is there any evidence to indicate that this is so; and, therefore, while he may have been at the time of entry excluded as an individual, he did not, under the charges made or the evidence produced, belong to an excluded class, so as to come within the five-year limitation." United States ex rel. Donati v. McCandless, 43 F. (2d) 1003, 1004.

Upon the records before us, we must hold that the District Court was not justified in its assumption that these aliens were charged

with being of a class excluded by the quota law from entering the United States.

Just why the two limitations are prescribed in the statute is not readily apparent; but we are not so much concerned with the reason for the two different limitations as we are with the dividing line between them. In Judge Woodward's opinion it is well said that "the three-year limitation is applicable to those aliens who may be otherwise admissible, but who entered by means there declared to be unlawful. * * * The five-year limitation plainly applies when the alien is a member of a class excluded by law."

Charging the alien to the quota of his country is a function of the immigration officers, not of the alien. The fact alone that he does not appear to have been charged to his country's quota does not of itself constitute him a member of the class excluded by the quota law, nor indicate that he came here or is found here "in violation of any other law of the United States." For anything in the specific charges against them appearing to the contrary, the entry and presence of these aliens may have been lawful, and the failure to charge them to the quota of their countries the omission of the immigration officers charged with that duty. But if it might be said that their presence here without having been charged to the quota of their countries sets forth a violation of some law of the United States, it seems to us that the matter of charging the alien to his country's quota is so related and incidental to the manner, place, and time of entry, as to draw to itself the same limitation as would be applicable to the latter, which, under the statute, is three years.

If, therefore, any lawful cause for deportation of these aliens is in fact disclosed in the records before us, it is one which is so associated with the manner, place, and time of their actual entry that the three-year limitation upon their deportation applies; and, it appearing from the warrants themselves that more than three years intervened between time of entry and the commencement of the deportation proceedings, appellants were entitled to prevail under their several petitions for habeas corpus.

It is evident that the foregoing propositions, which we regard as decisive of these appeals, were not presented to nor considered by the District Court. In each of the appeals the order of the District Court is reversed, and the cause remanded to that court with direction to proceed in harmony herewith.