285 F.2d 572
 WONG KWOK SUI, Appellant,
v.
John P. BOYD, as District Director of Immigration and Naturalization Service at Seattle, Washington, Appellee.
 No. 16799.
 United States Court of Appeals Ninth Circuit.
 December 14, 1960.
 
 COPYRIGHT MATERIAL OMITTED J. P. Sanderson, Gerald Shucklin, Seattle, Wash., for appellant.
 Charles P. Moriarty, U. S. Atty., James F. McAteer, Seattle, Wash., for appellee.
 Before CHAMBERS and HAMLEY, Circuit Judges, and SOLOMON, District Judge.
 CHAMBERS, Circuit Judge.
 
 
 1
 Wong Kwok Sui came into the United States in 1951 from China without controversy. At that time, he asserted, and apparently still does, that his father was Wong Fook Quong (hereafter Quong), admittedly a citizen of the United States, and that his mother was Mar Toy Fung (hereafter Fung), an alien and resident of Hong Kong.[1] Sometime in December, 1951, the Immigration Service issued him an identification card reciting citizenship. (He claims the initial procedures when he came into the country finally settled and concluded the question of his nationality. To this, we shall return later herein.)
 
 
 2
 Some months after arrival, Wong Kwok Sui's (hereafter Sui) problems which concern us began when his alleged brother in Hong Kong made application for a travel document to come to the United States. All three, Sui, Quong and Fung, submitted to blood tests. The results showed the blood of Sui and Quong to be compatible but the blood types of Sui and the alleged mother, Fung, incompatible.
 
 
 3
 On January 6, 1955, Boyd, as district director of immigration, issued a warrant for Sui's arrest on the ground that he was an immigrant not in possession of a valid immigration visa at the time of entry.[2] A "deportation hearing" was held before a special hearing officer on February 17, 1955, and continued to April 14, 1955. And on April 22, 1955, Sui was ordered deported because he had no visa at the time of the entry. (Sui says, he being a citizen, it was a hidden charge to try him for not having a visa.)
 
 
 4
 Sui sought a judicial review in the District Court for the Western District of Washington under the Administrative Procedure Act.[3] There he was partially successful, the court holding that there should have been some evidence as to the qualifications of the doctor (one Vio) in Hong Kong who took the blood sample from Fung. Upon the remand, the deportation hearing was opened and the depositions of the two doctors in Hong Kong who had been concerned with the blood tests of Fung were taken on interrogatories of the Immigration Service and cross interrogatories of Sui. Thereupon, the reopened hearing was concluded and Sui was again ordered deported.
 
 
 5
 Once more Sui filed a complaint in the same district court for review of the proceedings. This time the record was found adequate to sustain Director Boyd's position. The decision of the special inquiry officer as approved by the Board of Immigration Appeals was upheld and the complaint dismissed. Now Sui has appealed to this court.
 
 
 6
 We have alluded to Sui's claim that the charge against him, that he was an alien who had and has no visa, is not permissible because he has already been admitted as a citizen. This charge makes a traversable issue as to whether he is a citizen and consequently not an alien. But he is wrong that his original admission and the issuance of an identification card constitutes an adjudication or an estoppel of the government. It is no more an adjudication or a final determination than when an immigration officer asks a person at the border who has taken a walk into Canada or Mexico if he is a citizen and passes him into the country. If so, thousands of adjudications would be taking place every day. The identification card certainly is nothing more than a prima facie matter administratively. No case cited by Sui on any point bears him out that his admittance constituted an adjudication of citizenship or estopped the director. And we can find none. United States ex rel. Vajta v. Watkins, 2 Cir., 179 F.2d 137, and Mannerfrid v. Brownell, 99 U.S.App.D.C. 171, 238 F.2d 32, are two of several cases squarely against him. Citizenship of course is a precious right and not to be denied lightly. So, the director has the burden of proof.
 
 
 7
 While we do not believe that the case ever got beyond a question of fact, still we think there was evidence from which a trier of fact could conclude that Sui was an alien. And it would pass as a preponderance, as clear, cogent and convincing, or as beyond a reasonable doubt.
 
 
 8
 Sui's main point goes to the adequacy of the evidence and involves the qualifications of one Dr. Vio in Hong Kong to take a sample of Fung's blood in Hong Kong and to classify it.[4] We have examined the depositions and are satisfied his competence was adequately established. We rest our appraisal on the record, and not upon what is not there. However, when we have done that, we feel better about our decision when we know that Sui did nothing on his part to get proof that Fung's blood type was not as Dr. Vio found it and did nothing to contradict expertly the government's evidence as to the significance of the types.
 
 
 9
 The fact that Sui's blood was compatible with Quong's, the alleged father's (a citizen), does not raise a presumption that he was the son of Quong when Sui claims he was the son of Quong and Fung, where an impossible compatibility of the three blood types exists. At this point in the sequence, we hold the burden then shifted to Sui. At least as a minimum, Sui would have the problem of finding another mother.
 
 
 10
 Sui asserts the evidence on the blood testing is conflicting. If so, we might reverse, but we do not find it so.[5]
 
 
 11
 Also, he claims under Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107, that he had the right to be present and cross-examine the witness. Certainly he had a right to be given the same opportunity to examine the witnesses that the government had. This, he had. There is no authority which denies the use of a deposition with interrogatories and cross interrogatories in this type of civil proceeding.
 
 
 12
 The decision of the trial court on review is affirmed.
 
 
 
 Notes:
 
 
 [1]
 At the time of entry, Wong Kwok Sui supported his claim with an affidavit of the alleged father, Quong, who swore that Sui was born to him and Fung on October 2, 1928, in Hong Kong
 
 
 [2]
 See 8 U.S.C. § 1251(a) and 8 U.S.C. § 213(a) [now 8 U.S.C.A. § 1181(a)]
 
 
 [3]
 See 5 U.S.C. §§ 1009, 1011
 
 
 [4]
 At the hearing, the significance of the Hong Kong tests were testified to by a Dr. Kratz of the United States Public Health Service. It was he who found the incompatibility. Dr. Vio did not testify as to the significance of the three blood types found in the alleged father, mother and son
 
 
 [5]
 Our decision is in accord with Lew Moon Cheung v. Rogers, 9 Cir., 272 F.2d 354. And this court regards its result herein as wholly consistent with United States ex rel. Lee Kum Hoy v. Murff, 355 U.S. 169, 78 S.Ct. 203, 2 L.Ed.2d 177