**Federico LOPEZ–BLANCO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 13556.**

United States Court of Appeals
Seventh Circuit.

May 10, 1962.

Nathan T. Notkin, Chicago, Ill., for petitioner.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for respondent.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

This matter comes before the Court on petition for review of a deportation order under Section 5, Public Law 87–301, 87th Congress [U.S.Code Congressional and Administrative News, 1961, Vol. I, p. 731 et seq.], 8 U.S.C.A. § 1105a.

Petitioner, Federico Lopez-Blanco, is a citizen of Mexico, who was admitted into the United States for permanent residence in 1954. He has since made several trips to Mexico.

On May 11, 1959, he was convicted in the U. S. District Court for the Southern District of Texas, Brownsville Division, on his plea of guilty to one count of a four-count indictment. He pleaded guilty to the charge of wilfully and knowingly transporting one Jesus Rodriguez Ceballos from Hidalgo, Texas, to Falfurrias, Texas, knowing him to be

in the United States in violation of law. At that time, the District Court recommended that Mr. Lopez-Blanco not be deported because of that conviction.

Mr. Lopez-Blanco's latest entry into the United States was at McAllen, Texas, on or about July 10, 1960. On February 1, 1961, an order was issued requiring Mr. Lopez-Blanco to show cause why he should not be deported because of violation of the Immigration and Naturalization Act [8 U.S.C.A. § 1251(a) (13)] in that, prior to entry, Mr. Lopez-Blanco had knowingly and for gain encouraged, induced, assisted, abetted, or aided Jesus Rodriguez Ceballos to enter or try to enter the United States in violation of law. After a hearing before a Special Inquiry Officer, Mr. Lopez-Blanco was ordered deported, and this request for review followed.

On Mr. Lopez-Blanco's behalf it is contended that apparent admissions which appear frequently in the record are really the result of misunderstanding and confusion. For example, the Spanish word "en" may be translated as "in" or "into." Thus Counsel for Mr. Lopez-Blanco argues that when his client said he had transported Mr. Ceballos into the United States, he meant that he had transported him within the United States. Counsel also urges that no reliance be placed on the conviction mentioned above on the theory that Mr. Lopez-Blanco pleaded guilty to one count of the indictment only for the sake of expediency to secure dismissal of the other three counts, and in reliance on the District Court's recommendation against deportation.

It is agreed that Mr. Lopez-Blanco would not be deportable for merely transporting Mr. Ceballos within the United States, unless he had also aided in Mr. Ceballos' unlawful entry.

Mr. Lopez-Blanco asserts that he innocently accepted $25 from Mr. Ceballos' father in Mexico to transport Mr. Ceballos from San Luis Potosi, Mexico, to Chicago, in the mistaken belief that Mr. Ceballos had appropriate documents for lawful entry into the United States. When he discovered his error, he was unable to return the $25, which had been spent, and he states that he was forced to transport Mr. Ceballos from San Luis Potosi. However, he insists that he took Mr. Ceballos only to the International Border at Reynosa, Mexico. He also told the Special Inquiry Officer at one point that, contrary to his plea in the Texas District Court, he did not transport Mr. Ceballos within the United States, but that he did transport Mr. and Mrs. Reymundo Garcia Almanza. He incorrectly stated at one point that he had pleaded guilty to a charge of transporting the Almanzas. Mr. Lopez-Blanco told the Special Inquiry Officer that he later met Mr. Ceballos in Texas and that he and others in the party travelled to Chicago in two automobiles, but that he travelled in one automobile and Mr. Ceballos in the other.

Counsel argues that the record does not clearly show how Mr. Ceballos entered the United States and that he may have secured a proper visa or permit and entered legally. However, the record does show several statements by Mr. Lopez-Blanco to the effect that he brought Mr. Ceballos to the border in his automobile, but that Mr. Ceballos walked across. He also states that he transported Mr. Ceballos from San Luis Potosi to Reynosa knowing that Mr. Ceballos was intending to attempt entry by representing himself to be another person who was a legal permanent resident of the United States.

Petitioner also contends that denial of voluntary departure was error. He argues that he has shown himself to be of good moral character, innocent of the offense set out in the order to show cause, and eligible to receive the benefits of voluntary departure.

■ In reviewing questions of fact in deportation proceedings, the petition must be determined solely on the administrative record on which the deportation order is based. The findings of fact, if supported by reasonable, substantial, and probative evidence, on the record considered as a whole, are conclu-

sive. Lattig v. Pilliod, 7 Cir., 1961, 289 F.2d 478.

▪ Our scrutiny of the record as a whole satisfies us that the final order of deportation in this case was based on reasonable, substantial and probative evidence, and must be affirmed.

▪ Because of our decision respecting the findings on which the final order of deportation is based, we must also conclude that denial of voluntary departure did not constitute an abuse of discretion. The petitioner did not show the requisite good moral character. Pimental-Navarro v. Del Guercio, 9 Cir., 1958, 256 F.2d 877.

Affirmed.