Victoria Marquez **TALAVERA**, Petitioner,

v.

Thomas M. **PEDERSON**, District Director, Immigration and Naturalization Service, Respondent.

No. 15252.

United States Court of Appeals Sixth Circuit.

June 10, 1964.

Bernard Mosesson, Cleveland, Ohio, Rollins & Mosesson, Cleveland, Ohio, on the brief, for petitioner.

Donald Bennett, Dept. of Justice, Washington, D. C., Joseph P. Kinneary, U. S. Atty., Charles G. Heyd, Asst. U. S. Atty., Cincinnati, Ohio, on the brief; Kenneth C. Shelver, Don R. Bennett, Attys., Dept. of Justice, Washington, D. C., of counsel, for respondent.

Before MILLER and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner, Victoria Marquez Talavera, seeks to review an order of the Board of Immigration Appeals of October 16, 1962, dismissing petitioner's appeal from an order of the special inquiry officer finding the respondent subject to deportation and denying her application for the discretionary relief of voluntary departure.

The petitioner is a 45-year old married woman, a native and citizen of the Philippines, and a registered nurse, who was originally admitted to the United States at Anchorage, Alaska, on April 21, 1960, as a nonimmigrant visitor, pursuant to authority in the United States Information and Educational Exchange Act of 1948, as amended, (22 U.S.Code § 1431 et seq.) for a period to expire on March

28, 1961. She was destined to the Sunny Acres Hospital, Cleveland, Ohio.

On January 11, 1961, the petitioner was served with an order to show cause why she should not be deported on the ground that at the time of her entry she was inadmissible, in that she was an alien who had procured a visa or other documentation by fraud or by wilfully misrepresenting a material fact. Sections 241(a) (1) and 212(a) (19) of the Immigration & Nationality Act of 1952, Sections 1251 (a) (1) and 1182(a) (19), Title 8, United States Code. This is hereinafter referred to as the 1961 deportation proceedings. Her counsel conceded at the deportation hearing that she was a married woman, having married a Mr. Hatton in 1950; that she had falsely stated in her visa application that she was single; that she had intentionally failed to disclose in the application that she was the mother of five minor children. There was introduced at the hearing a statement taken from the petitioner on September 30, 1960, wherein she admitted that she was still legally the wife of Hatton; that she had lived from 1946 to 1956 with a Mr. Joaquin, who was the father of her five children; that the illicit relationship was terminated in 1956 following his marriage to someone else; that she subsequently caused Joaquin to separate from his wife; that she again thereafter lived with Joaquin in a husband and wife relationship for a period ending in December 1959; and that she was aware that she had committed adultery in living with Joaquin.

On February 27, 1961, the special inquiry officer found petitioner to be deportable and directed her deportation from the United States on the charge contained in the order to show cause, but on October 23, 1961, the Board of Immigration Appeals remanded the proceeding to the special inquiry officer for further consideration in the light of a ruling by the Attorney General on the question of the materiality of misrepresentation for the purposes of Section 212(a) (19) of the 1952 Act. In a decision dated January 4, 1962, the special inquiry officer again ordered petitioner deported. On March 16, 1962, the Board of Immigration Appeals ruled that petitioner's misrepresentations were not material and ordered that the special inquiry officer's order of deportation be withdrawn and the deportation proceedings terminated. It appears that there was an administrative policy of long standing not to sustain a ground of deportation arising as a result of an alien's admission of the commission of an act of adultery in the absence of a conviction for the offense.

On April 28, 1962, the petitioner was granted permission to depart from the United States on or before May 15, 1962. She failed to depart in accordance with this authorization and an order to show cause was issued against her on June 5, 1962, charging her with being deportable, in that, after admission as a nonimmigrant, she had remained in the United States for a longer time than permitted. Section 241(a) (2) of the Act; Section 1251(a) (2), Title 8 United States Code. This is hereinafter referred to as the 1962 deportation proceedings.

At the deportation hearing on June 14, 1962, the petitioner requested a continuance because of a divorce proceeding she had pending, which was scheduled to be heard on June 29, 1962, which request was granted. The hearing was resumed on July 9, 1962. The petitioner conceded the factual allegations, but contested deportability on the ground that by reason of the order of continuance entered on June 14, 1962, she was not in the country illegally. The special inquiry officer ruled that her authorized period of admission expired on March 28, 1961, and that her subsequent presence in this country was merely one at sufferance pending her departure.

At the July 9, 1962, hearing the petitioner applied for the privilege under Section 244(e) of the Act of voluntary departure in lieu of deportation. Section 1254(e), Title 8 United States Code. This section of the Act provides that the Attorney General may in his discretion permit any alien under deportation proceedings with certain exceptions "to de--

part voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection." Section 101(f) (2) of the Act provides that no person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was "one who during such period has committed adultery." Section 1101(f) (2), Title 8 United States Code. In a decision dated August 16, 1962, as amended September 11, 1962, the special inquiry officer ordered the petitioner deported on the charge stated in the 1962 order to show cause. He found her ineligible for voluntary departure in that her relationship with Joaquin until December 1959 precluded her from establishing the requisite good moral character during the statutory period. The Board of Immigration Appeals sustained the special inquiry officer in a decision dated October 16, 1962. This is the order now subject to review. A warrant of deportation was issued December 5, 1962.

Petitioner evidently obtained a divorce in July 1962 from Hatton and married Martin Talavera, a 59-year old Filipino and a naturalized American citizen, on July 28, 1962. By Section 212(e) of the Act of September 21, 1961, Pub.L. 87–256, 75 Stat. 535; Section 1182(e), Title 8 United States Code; it is required that exchange visitors, under which authority petitioner originally entered the United States, depart from the United States and remain in another country for two years before again becoming eligible to reside in this country, provided, however, "That upon the favorable recommendation of the Secretary of State, pursuant to the request of an interested United States Government agency, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose ex-

ceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest: * * *."

On July 28, 1962, the day the petitioner married Martin Talavera, she filed an application under the provision above referred to, for a waiver of the requirement of two years residence abroad before becoming eligible to reside in the United States. In her affidavit supporting the application she stated that her husband's health was not of the best; that previously he was married to an American girl, which marriage terminated in divorce after approximately two years, and that a marriage of similar interests and background was necessary in light of his past experience; that at his age and station in life there was little or no opportunity for him to find someone of similar background and extraction; that she would be of great assistance to him in the maintenance of a residence he owned and in his business affairs; that her husband would suffer extreme and undue hardship in that he would lose a companion for two years; that he was hospitalized in an emergency some two years before and that her training as a nurse would be of tremendous benefit if any further difficulties occurred; that she had been forced to leave Sunny Acres Hospital and abandon the exchange visitor program because of a serious physical condition; that drugs she needed would not be so readily available to her outside the United States and that her weakened physical condition would make her receptive to respiratory ailments prevalent in the Philippines, and that it would impose extreme and unusual hardship upon her husband if she were to become ill there.

In a letter dated November 27, 1962, the District Director advised the petitioner that "Based upon all of the factors in your case, it has been concluded that the strict demands of the statute have not

been met and facts do not warrant submitting a request to the Secretary of State for a recommendation in your case." The petition for review filed in this Court on January 7, 1963, also attacks the denial of this waiver under Section 212(e) of the Act.

We are met first with the question of the jurisdiction of this Court to review the order in question. Petitioner claims that jurisdiction arises under Section 5 (a) of Public Law 87–301, Act of September 26, 1961, which added a new Section 106(a) to the Immigration and Nationality Act of 1952, carried as Section 1105 a, Title 8 United States Code. Section 106(a) provides that the procedure prescribed by, and all the provisions of the Act of December 29, 1950, as amended, (Section 1031 et seq., Title 5 United States Code), which gives to the courts of appeals exclusive jurisdiction to review "all final orders" in specified proceedings before Federal agencies, "shall apply to and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act * * *." The question involved is whether Section 106(a) conferring jurisdiction to review "final orders of deportation" includes jurisdiction to review a denial of discretionary relief, such as is involved in this case.

The respondent agrees with the petitioner that jurisdiction exists, but concedes that by reason of the numerous conflicting rulings in several circuits, both upholding and denying jurisdiction to review, the question is not a settled one and is open to consideration and a ruling by this Court. See: Blagaic v. Flagg, 304 F.2d 623, C.A.7th; Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453, C.A.7th, cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed. 2d 230; Lopez-Blanco v. Immigration and Naturalization Service, 302 F.2d 553, C.A.7th; Fong v. Immigration and Naturalization Service, 308 F.2d 191, C.A.9th; Holz v. Immigration and Nat-

uralization Service, 309 F.2d 452, C.A. 9th; Arreche-Barcelona v. Immigration and Naturalization Service, 310 F.2d 690, C.A.9th; Foti v. Immigration and Naturalization Service, 308 F.2d 779, C.A.2nd, cert. granted, 371 U.S. 947, 83 S.Ct. 503, 9 L.Ed.2d 496; Lam Man Chi v. Bouchard, 314 F.2d 664, C.A.3rd; Scalzo v. Hurney, 314 F.2d 675, C.A.3rd. Accordingly, respondent's brief includes argument in support of jurisdiction to review the denial of discretionary relief in the present case.

■ Since respondent's brief was filed, and after the oral argument in this case, the Supreme Court decided the case of Foti v. Immigration and Naturalization Service, supra, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281, holding that under Section 106(a) of the Act as added in 1961, the Court of Appeals has sole and exclusive jurisdiction to review an administrative determination by the Attorney General denying a suspension of deportation sought by an alien under Section 244(a) (5). Under the authority of that ruling we take jurisdiction in the present case.

■ Respondent calls to our attention that the original pleading of the petitioner is denominated "Complaint in Review Proceedings Petition for Review," and names the District Director of the Immigration and Naturalization Service at Cleveland, Ohio, as the respondent, although under Section 106(a) (1) and (3) the pleading should have been denominated "petition for review" and the Immigration and Naturalization Service should have been named respondent. The Service moves that it be substituted as respondent and the caption of the case be changed to so read. The motion is sustained. Fong v. Immigration and Naturalization Service, supra, 308 F.2d 191, 196, C.A.9th.

The petition for review alleges in broad language that the deportation order of October 16, 1962, is contrary to law, constitutes a denial of petitioner's rights under the Federal Constitution and the laws of the United States, and is a denial of

due process. No specific attack is made on the denial of the discretionary relief to depart voluntarily, although that is part of the deportation order of October 16, 1962, which petitioner seeks to review. We treat the denial of discretionary relief as being under review in this proceeding, as well as the later ruling of November 27, 1962, denying the waiver of the requirement of two years residence abroad under Section 212(e) of the Act.

In support of the allegation that the order of deportation constitutes a denial of petitioner's rights under the Federal Constitution, it is claimed that the earlier order of March 16, 1962, in the 1961 deportation proceedings withdrawing the order of deportation and terminating the deportation proceedings, constituted a bar to the 1962 deportation proceedings on the principle of res judicata.

■ An administrative agency, such as the Immigration and Naturalization Service, is not a court, and the principle of res judicata is not applicable to its rulings. Pearson v. Williams, 202 U.S. 281, 284–285, 26 S.Ct. 608, 50 L.Ed. 1029; Mannerfrid v. Brownell, D.C., 145 F. Supp. 55, affirmed, 99 U.S.App.D.C. 171, 238 F.2d 32; Jason v. Summerfield, 94 U.S.App.D.C. 197, 214 F.2d 273, 275–276.

■ Even if the principle was applicable it would not operate as a bar in the present case. In the 1961 deportation proceeding, deportation was based upon the claim that the petitioner had procured a visa by fraud or by wilfully misrepresenting a material fact. In the 1962 deportation proceeding, deportation was based upon the claim that the petitioner, after admission as a nonimmigrant, had remained in the United States for a longer time than permitted by law. The two claims are entirely different. A ruling against the respondent on the first claim was in no way a ruling on the issue of whether the petitioner had overstayed her authorized time in the United States.

■ Nor is there any merit in the contention that since in the 1961 proceeding admitted acts of adultery were not sufficient to cause respondent to be deported, the same admitted acts of adultery should not deprive her of the discretionary relief of voluntary departure in the 1962 proceeding. The ruling in the 1961 proceeding was based on the administrative policy of long standing that acts of adultery, in the absence of a conviction for adultery, were not sufficient to sustain the ground of deportation alleged in that case. In the 1962 proceeding deportability was not based upon acts of adultery, but upon an entirely different ground. The admitted acts of adultery were material only in the collateral matter of the denial of discretionary relief, which was not involved in the earlier proceeding. In this collateral matter of discretionary relief, after deportability had been established on a ground other than adultery, such relief was barred under the express wording of the statute by reasons of acts of adultery, not requiring a conviction for adultery. Under the provisions of the statute the denial of discretionary relief was required. We think Congress acted reasonably and justifiably in requiring less for a denial of discretionary relief in the 1962 collateral proceeding than was required to establish deportability in the 1961 proceeding.

We are not advised by petitioner's brief just why the order of deportation is contrary to law or constitutes a denial of due process, other than the claim that it violates the principle of res judicata, which we have rejected. The order is fully supported by the facts and is in accordance with the statutory provisions. No procedural irregularity is called to our attention. The petition for review alleges that the order is "contrary to law" because of the denial of the application for a waiver of the requirement of two years residence abroad, which is attacked as an arbitrary act of power. But the denial of the waiver did not occur until November 27, 1962, which was some six weeks after the entry of the order of October 16, 1962.

However, independent of its effect on the earlier order of deportation, the petition for review obviously attacks the

**58**

validity of the denial of waiver, which we will consider.

 Section 212(e) of the Act, Section 1182(e), Title 8 United States Code, authorizes the waiver of the two years residence abroad only in cases of "exceptional hardship" upon the alien's spouse or child, if he is a citizen of the United States or a lawfully resident alien. Exceptional hardship contemplates more than normal personal hardship. Report No. 721 of the House of Representatives, dated July 17, 1961, prepared by Subcommittee No. 1 of the Committee on the Judiciary on the "Immigration Aspects of the International Education Exchange Program" states, "It is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers, including cases where marriage occurring in the United States or the birth of a child or children is used to support the contention that the exchange alien's departure from this country would cause personal hardship." The Report stressed the need of "a most diligent and stringent enforcement of the 2-year foreign residence requirements."

 It will be noticed that petitioner married Martin Talavera the same day she applied for the waiver. Apparently, he had not been a hardship case prior to that time. Most of the matters which petitioner's affidavit claims would result in exceptional hardship to the husband are conjectural. These were known to the petitioner at the time of the marriage. Although there is the probability that the marriage relationship will not be the normal relationship between the parties for the two-year period involved, we do not regard the situation as meeting the stringent test of exceptional hardship required by the statute. We can not say that the ruling of the District Director in denying the waiver was capricious, arbitrary or an abuse of discretion.

 Finally, we find no merit in petitioner's contention that there is a denial of due process on this issue because no clear standards or criteria are set up as guideposts for the Commissioner of Immigration and Naturalization to follow under the ruling in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, in acting upon such an application. See: Jordan v. DeGeorge, 341 U.S. 223, 229–232, note 15, page 231, 71 S.Ct. 703, 95 L.Ed. 886. If we should assume that this provision of the Act is void and unenforcible, there is no statutory authority left in the Act providing for the waiver which petitioner seeks.

The petition for review is dismissed.